UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW LITTLE, SHERRY LITTLE          )
and LITTLE LIMITS LLC,                 )
                                       )
                Plaintiffs,            )          Case No.
                                       )
        v.                             )          Judge
                                       )
DUFOUR YACHTS SAS, DUFOUR              )          Magistrate Judge
YACHTS USA, INC., CROSSLINK            )
MARKETING, LLC and ERIC MACKLIN        )
(also known as Jeffrey Eric Macklin),  )
                                       )
                Defendants.            )

## COMPLAINT

NOW COME the plaintiffs, by their attorney, Timothy S. McGovern, and complain of defendants as follows:

1.      This action is brought under the Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970, 18 U.S.C.A. §§ 1961, *et seq*., ("RICO").

2.      Plaintiffs' action has its genesis from their purchase of a Dufour-manufactured sailing vessel bearing Official No. 1263344 (the "Vessel"). DUFOUR YACHTS SAS, a French business entity ("Dufour SAS"), manufactures, markets and sells its foreign-built sailing vessels to individuals in the United States via its U.S. agents. The vessels are sold with the promise that, other than a down payment, all costs of ownership can be defrayed by entering the vessel into a community pool for use by other members of a fractional ownership program (the "Program"). In the community pool, most members do not own a vessel, but instead purchase time-slots for the use of pooled vessels. Vessel owners participate in the Program in exchange for (1) a monthly

payment that equals the carrying cost of ownership; (2) the provision of boat storage fees, slip fees, maintenance, fuel, etc.; and (3) restricted access to the vessel purchased.

3.    DUFOUR YACHTS USA, INC., a Maryland corporation incorporated on January 3, 1997, and dissolved in 2013 ("Dufour USA"), is currently registered with the United States Coast Guard as the importer/manufacturer of yachts for Dufour Yachts SAS, pursuant to 33 CFR § 181.31(a). The United States Coast Guard database identifies defendant Eric Macklin as the "Company Official" of Dufour USA. *Exhibit 1, also located at* *https://www.uscgboating.org/content/manufacturers-identification-detail.php?id=2583*, *last accessed May 3, 2019*.

4.    CROSSLINK MARKETING LLC, is or was a Florida limited liability company ("Crosslink"). Jeffrey E. Macklin (also known as Eric Macklin) was the authorized member and registered agent of Crosslink at all material times. Dufour SAS and Eric Macklin identified Crosslink "importer of record" and "ultimate consignee" of the Vessel on behalf of Dufour SAS in filings with the United States Department of Homeland Security, as explained more fully below.

5.    ERIC MACKLIN (also known as Jeffrey Eric Macklin) is a resident of the state of Florida. Mr. Macklin was the authorized member and registered agent of Crosslink Marketing, LLC, at all material times. In addition, he is the North American Sales Agent for Dufour Yachts SAS, Company Official for Dufour Yachts USA, Inc., and principal of various Dufour-related entities, including JJL USA, Inc., Northstar Yacht Sales and Dream Yachts.

6.    Plaintiff, Little Limits LLC, is an Illinois limited liability company with its principal offices located within this district. Matthew Little and Sherry Little, plaintiffs, are individuals residing within this district. Matthew Little and Sherry Little comprise all of the Members of Little Limits LLC. Little Limits LLC, Matthew Little and Sherry Little shall be

referred to as the "Littles" from time-to-time for convenience. The Littles purchased the Vessel in 2015 pursuant to a series of transactions that were implemented and executed by defendants, as more fully described below. Matthew Little and Sherry Little executed documents, paid money out-of-pocket and financed the purchase of the Vessel via a mortgage agreement with U.S. Bank.

## JURISDICTION AND VENUE

7.      This court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964. This Court has supplemental jurisdiction over common law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2). Plaintiffs' entered into all agreements related to the Vessel, purchased the Vessel, took delivery of the Vessel and suffered their injuries within this district. The Vessel is located within this district. Defendants operated the Program within this district and shipped the Vessel to Chicago, Illinois, within this district. Further, Dufour SAS and Eric Macklin marketed the program at the Chicago Boat, Sports and R.V. Show at McCormick Place within this district.

## DUFOUR OPERATIONS IN THE UNITED STATES

9.      On January 3, 1997, Dufour SAS incorporated Dufour USA in Maryland.

10.     In approximately 2008, Salvatore Serio became president and majority shareholder of Dufour SAS. *Exhibit 2, LinkedIn profile for Salvatore Serio*.

11.     For an unknown period of time until approximately 2010, Dufour SAS exported no vessels to the United States. In approximately 2010, Dufour SAS resumed marketing and exporting sailing vessels to United States residents. *Exhibit 3, SAIL Magazine article dated August 4, 2010*.

12.     In 2010, Eric Macklin become the Sales Director: North America for Dufour. *Exhibit 4, Eric Macklin LinkedIn profile and Dufour press releases*.

13.     Dufour SAS was a vessel manufacturer, as defined by 33 CFR ¶ 181.3.

14.     In order to import foreign-built vessels into the United States, any foreign vessel manufacturer must adhere to the requirements mandated under federal law, including, but not limited to:

a.      33 CFR § 181.23(a): "A manufacturer must identify each boat produced or imported with primary and secondary hull identification numbers permanently affixed in accordance with § 181.29 of this subpart."

b.      33 CFR 181.31: "(a) Each person required by § 181.23(a) of this part to affix hull identifications numbers must request a manufacturer identification code in writing from the Commandant….(b) For boats manufactured outside of the jurisdiction of the United States, a U.S. importer must obtain a manufacturer identification code as required by paragraph (a) of this section. The request must indicate the importer's name and U.S. address along with a list of the manufacturers, their addresses, and the general types and sizes of boats that will be imported."

c.      33 CFR § 181.33: "(a) No manufacturer or importer may sell or transfer a manufacturer identification code or use a manufacturer identification code that has been assigned to another. (b) A manufacturer or importer who changes the business name or address must advise the Commandant…."

d.      19 U.S.C. § 1481(a): "All invoices of merchandise to be imported into the United States and any electronic equivalent thereof considered acceptable by the Secretary in regulations prescribed under this section shall set forth, in written, electronic, or such other form as the Secretary shall prescribe, the following:…(5) The purchase price of each item in the currency of the purchase, if the merchandise is shipped in pursuance of a purchase or an agreement to purchase…."

e.      19 U.S.C. § 1484(d)(1): "Entries shall be signed by the importer of record, or his agent, unless filed pursuant to an electronic data interchange system. If electronically filed, each transmission of data shall be certified by an importer of record or his agent, one of whom shall be resident in the United States for purposes of receiving service of process, as being true and correct to the best of his knowledge and belief, and such transmission shall be binding in the same manner and to the same extent as a signed document. The entry shall set forth such facts in regard to the importation as the Secretary may require and shall be accompanied by such invoices, bills of

lading, certificates, and documents, or their electronically submitted equivalents, as are required by regulation."

15.    In accordance with 33 CFR § 181.23(a) and 33 CFR § 181.33, Dufour SAS applied for and received a manufacturer identification code and identified Dufour USA as its U.S. importer with the required U.S. address. *Exhibit 1* (also available via the U.S. Coast Guard database located at   https://www.uscgboating.org/content/manufacturers-identification-detail.php?id=2583,   last accessed July 25, 2019).

16.    As of July 25, 2019, Dufour continued to identify Dufour USA as its importer of record to the United States Coast Guard, with Eric Macklin identified as Dufour's "Company Official" within the United States. This information was last updated on October 18, 2018. *Id*.

17.    Salvatore Serio, president of Dufour SAS, executed Articles of Dissolution for Dufour USA as president, which Dufour USA filed with the state of Maryland on February 19, 2013. *Exhibit 5, Articles of Dissolution for Dufour USA*.

18.    Dufour SAS and Eric Macklin had an obligation to advise the United States Coast Guard of any change related to the U.S. importer for Dufour SAS, pursuant to 33 CFR § 181.33(b).

19.    Since February 19, 2013, Dufour SAS and Eric Macklin have purposefully misrepresented to the United States Coast Guard that the dissolved Dufour USA is a valid and existing importer of record for Dufour SAS vessels.

20.    Since February 19, 2013, Dufour SAS and Eric Macklin have failed to maintain a valid importer of record for Dufour SAS vessels.

21.    Upon information and belief, Dufour SAS and Eric Macklin have imported over 175 vessels into the United States since February 19, 2013.

22.     Upon information and belief, Dufour SAS and Eric Macklin have imported Dufour brand vessels into the United States under the following entities identified as importer of record: Crosslink Marketing, LLC; JJL USA Inc.; Dream Yachts.

**FRACTIONAL OWNERSHIP PROGRAM - THE ENTERPRISE**

23.     Fractional ownership programs exist throughout the United States related to jet aircraft, real estate and yachts, among other things. *See, for example*, www.netjets.com (for jets); https://www.foxbusiness.com/features/fractional-real-estate-ownership-getting-a-slice-of-a-vacation-home (for real estate).

24.     Dufour SAS and Eric Macklin have marketed and operated fractional ownership programs throughout the United States, including via Dream Yacht Charter USA, located in Dania Beach, Florida (Exhibit 6 and 7) and Broad Reach in Chicago, Illinois (Exhibit 8).

25.     In Illinois, the Program has been operating since at least 2007. *Exhibit 9*.

26.     In 2016, the Program expanded to Cleveland, Ohio. *Id*.

27.     At all material times, the Program consisted of members in two general categories: vessel owners and non-vessel owners. Vessel owners invest in a yacht, making a down payment and agreeing to enter the vessel into a community pool. Other than the down payment, all costs of ownership are defrayed by participating in the Program. As a member of the Program, the vessel owner receives an allotment of points which can be used by the owner to bid in online auctions for charter time-slots aboard the vessel, but otherwise has restricted access to the vessel. In the Program non-vessel owner members likewise purchase an allotment of points, which are used by the member to bid on charter time-slots aboard the Program vessels.

28.     The Program is comprised of members that are associated-in-fact, although the Program is not a legal entity.

29.     Upon information and belief, as of 2015, the Program consisted of at least eight vessels and forty-eight individual members.

30.     Upon information and belief, Dufour SAS and Eric Macklin organized the Program.

31.     In Chicago, Broad Reach manages the Program on behalf of Dufour SAS.

32.     Previously, Dufour SAS marketed the fractional ownership programs, including the Program, on its website. *Exhibit 8*.

## PLAINTIFFS' INVESTMENT IN THE PROGRAM

33.     In early 2015, plaintiffs Matthew and Sherry Little researched an investment in the Program as a vessel owner.

34.     Plaintiffs were advised that if they made a down payment on the Vessel, obtained a loan for the remaining balance of the purchase price of the Vessel and entered the Vessel into the Program, plaintiffs would be able to own the Vessel with no monthly expenses and "zero" hassles or costs. *Exhibit 10*.

35.      Broad Reach represented to plaintiffs that they could obtain financing for plaintiffs from a lender familiar with the Dufour Program, if plaintiffs agreed to purchase the Vessel. Plaintiffs were directed to the broker Broad Reach represented as handling financed sales for their customers. Dufour SAS, Eric Macklin and Broad Reach initiated contact with the lending broker and coordinated details of the financing transaction throughout the entire process directly with the broker, at times to the exclusion of the plaintiffs.

36.     In early 2015, plaintiff Sherry Little asked Ted Anderson of Broad Reach if the Program complied with U.S. law. Ted Anderson assured Sherry Little that the Program was completely legal.

37.     Relying on the representations, plaintiffs agreed to enter into a purchase agreement for the Vessel, a true and accurate copy of which is submitted herewith as Exhibit 11 and made a part hereof ("Purchase Agreement"). Plaintiffs purchased the Vessel for $374,865, plus sales taxes of 7.25%. Plaintiffs made a down payment equaling $72,000 in cash and trade-in value of a separate vessel, and financed the balance of $330,043.00 for the purchase price.

38.     Plaintiffs executed documents related to the Program, true and accurate copies of which is submitted herewith as Exhibit 12 and made a part hereof.

39.     Pursuant to the Program, plaintiffs were to receive limited use of the Vessel, a monthly fee equal to plaintiffs' monthly mortgage payment of $2,439.63 and all mooring and storage fees, fuel, maintenance and upkeep costs, insurance and related incidental costs of ownership of the Vessel. Further, plaintiffs were not responsible for obtaining necessary permits, registration of the Vessel and paying necessary fees for charter operations.

40.     More specifically, the Program consisted of a points-based charter operation, sub-leasing the plaintiff's Vessel to members under the auspices of a bareboat charter. Program members paid a fee either in the amount of $12,500.00 or $7,500.00 annually for time-slots via a series of online auctions administered by Broad Reach via their proprietary web-based application, "Points of Sail".

41.     Upon information and belief, in 2015, Dufour SAS manufactured the Vessel in France for plaintiffs.

42.     On July 6, 2019, Dufour SAS executed United States Coast Guard Form CG-1261, representing to the U.S. government that the Vessel had been built for "BROAD REACH SAILING LLC." *Exhibit 14*.

43.     On July 16, 2019, Dufour SAS exported the Vessel from France to the United States. *Exhibit 14, Box 13-15.*

44.     On July 31, 2019, while the Vessel was transiting the Atlantic Ocean, prior to any closing on the sale of the Vessel, and without notice to plaintiffs, Broad Reach transferred title to the Vessel to plaintiffs. *Exhibit 15.*

45.     Dufour SAS and Eric Macklin imported the Vessel into the United States on August 2, 2015. *Exhibit 14, Box 11.*

46.     In documentation provided to the U.S. Customs Service, Dufour SAS and Eric Macklin represented that Crosslink Marketing LLC was the Importer of Record of the Vessel. *Exhibit 14, Box 26.*

47.     In documentation provided to the U.S. Customs Service, Dufour SAS and Eric Macklin falsely represented that Crosslink Marketing was the Ultimate Consignee of the Vessel. *Exhibit 14, Box 25.*

48.     In documentation provided to the U.S. Customs Service, Dufour SAS and Eric Macklin falsely represented that the Vessel was imported as a "pleasure" vessel. *Exhibit 14, Box 29a.*

49.     In documentation provided to the U.S. Customs Service, Dufour SAS and Eric Macklin falsely represented that Crosslink Marketing was "NOT RELATED" to Dufour SAS. *Exhibit 14, Box 32.*

50.     In documentation provided to the U.S. Customs Service, Dufour SAS and Eric Macklin falsely represented that the value of the Vessel was $203,157. *Exhibit 14, Box 35.*

51.     In documentation provided to the U.S. Customs Service, Dufour SAS and Eric Macklin provided an invoice for the sale of the Vessel to Broad Reach. *Exhibit 14.*

52. On August 6, 2015, Dufour SAS and Eric Macklin, thought their customs broker (UTC Overseas Inc.), executed the Entry Summary filed with the U.S. government. *Exhibit 14, Box 41*.

53. At all material times, plaintiffs were advised that their purchase of the Vessel was for "recreational" or "pleasure" purposes only.

54. All of the conduct alleged in ¶¶ 42-53, above, was committed in furtherance of a pattern of racketeering activity.

55. On August 12, 2015, the plaintiffs closed on the purchase of the Vessel (the "Closing").

56. At the Closing, plaintiffs' lender tendered funds in the amount of $330,043.00 for the purchase of the Vessel via wire transfer.

57. At the time of Closing, plaintiff Sherry Little asked Ted Anderson of Broad Reach whether the Vessel should be considered "Recreational" as indicated on the U.S. Coast Guard vessel documentation forms provided by the lender to the plaintiffs. Ted Anderson stated that the Fractional Sailing Program involved strictly bareboat charters, and therefore was recreational use under U.S. law and, specifically, was not a commercial or passenger-for-hire operation.

58. Broad Reach's website represented the fractional sailing program as a bareboat charter operation. See http://www.broadreachsailing.net/fractional-leasing/ (last accessed June 20, 2018). *Exhibit 16*.

59. At and before the Closing, plaintiffs relied on the expertise of Dufour, Eric Macklin and their agents regarding the legality of purchasing the Vessel for entry into the Program and to perform all actions necessary to import the Vessel into the United States.

60.    Unknown to plaintiffs, the Program's use of Dufour-brand vessels manufactured in France constituted "commercial" and not "recreational" use under U.S. law. *Customs Ruling HQ 116491, Exhibit 17*.

61.    At all material times, the Program's use of Dufour-brand vessels manufactured in France violated the Jones Act, 46 U.S.C.Appx. § 289.

## COUNT I
## Violation of 18 U.S.C. § 1962(a)

62.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 of its complaint as if fully restated herein.

63.    Dufour SAS, Crosslink and Eric Macklin engaged in a pattern of racketeering activity as principals related to the operation of the Program in various ways, including, but not limited to:

A.    On July 6, 2019, Dufour SAS executed and filed U.S. Coast Guard Form CG-1261, representing to the U.S. government that the Vessel had been built for "BROAD REACH SAILING LLC," in violation of 18 U.S.C. § 1956. *Exhibit 13*.

B.    On July 16, 2019, Dufour SAS exported the Vessel from France to the United States. *Exhibit 14, Box 13-15*. On July 31, 2019, while the Vessel was transiting the Atlantic Ocean, prior to Closing, and without notice to plaintiffs, Broad Reach executed and filed documents with the U.S. Coast Guard that transferred title to the Vessel to plaintiffs. *Exhibit 15*. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements. Dufour SAS, Crosslink and Eric Macklin failed to advise the U.S. government of the transfer of title for the Vessel, in violation of 18 U.S.C. § 1956.

C.    Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin represented that Crosslink Marketing LLC was the Importer of Record of the Vessel. *Exhibit 14, Box 26*.

D.    Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the

United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was the Ultimate Consignee of the Vessel. *Exhibit 14, Box 25*.

E.      Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the Vessel was imported as a "pleasure" vessel. *Exhibit 14, Box 29a*.

F.      Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541, 542, 1956 and 1957. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was "NOT RELATED" to Dufour SAS. *Exhibit 14, Box 32*.

G.      Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541 and 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the value of the Vessel was $203,157. *Exhibit 14, Box 35*.

H.      Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin provided a false invoice for the sale of the Vessel to Broad Reach. *Exhibit 14.*

I.      Upon information and belief, Dufour SAS and Eric Macklin violated 18 U.S.C. § 1343 by providing false information to their customs broker, UTC Overseas, via telephone and electronic mail, in international and/or interstate commerce. These telephone calls and electronic mails occurred between June of 2015 and August of 2015.

J.      Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. On or about March 10, 2015, the Littles provided funds for a downpayment to Broad Reach, who sent the funds to Dufour SAS in France to start construction of the Vessel. *Exhibit 18, email dated March 10, 2015*.

K.      Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. At Closing, the Littles entered into a mortgage agreement for purchase of the Vessel and directed their lender to transfer funds related to the purchase of the Vessel via wire transfer.

64.     Upon information and belief, Dufour SAS and Eric Macklin used funds derived from the pattern of racketeering activity to further the operation of the Program in Chicago and in other port cities throughout the United States.

65.     Upon information and belief, the pattern of racketeering activity involved the importation of vessels from France to the United States, the interstate transportation of vessels within the United States, and the exchange of funds, documents and communications in international and interstate commerce.

66.     The foregoing predicate acts constitute a pattern of related activity undertaken continuously over the course of several years. Upon information and belief, the pattern of racketeering activity has been and is a part of defendants' regular way of conducting business in the United States for over four years and continuing to the present day.

67.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs invested $72,500 as a down payment for the Vessel.

68.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs investment in the Vessel has caused them direct and substantial economic loss, including the loss of hassle-free and expense-free ownership. Plaintiffs have suffered, and will continue to suffer, monthly mortgage payments in the amount of $2,439.63 for a minimum of ten years and annual vessel expenses of approximately $20,000 per year for a minimum of ten years.

69.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs' Vessel has and may continue to have a possible cloud on the title due to the improper importation of the Vessel performed by defendants.

70.     But for the representations that the Program was legal, plaintiffs never would have purchased the Vessel.

71.    As the direct and proximate result of the pattern of racketeering activity, plaintiffs' investment in the Vessel has caused them direct and substantial economic loss by reason of degradation of the equity in the Vessel.

72.    By reason of the premises, plaintiffs have suffered damages in the estimated amount of $570,000.

## COUNT II
## Violation of 18 U.S.C. § 1962(b)

73.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 of its complaint as if fully restated herein.

74.    Dufour SAS, Crosslink and Eric Macklin, through a pattern of racketeering activity, maintained and interest in, and control of the Program, by the importation of Dufour-brand vessels for use in the Program. The pattern of racketeering activity affected foreign and interstate commerce in various ways, including, but not limited to:

A.    On July 6, 2019, Dufour SAS executed and filed U.S. Coast Guard Form CG-1261, representing to the U.S. government that the Vessel had been built for "BROAD REACH SAILING LLC," in violation of 18 U.S.C. § 1956. *Exhibit 13*.

B.    On July 16, 2019, Dufour SAS exported the Vessel from France to the United States. *Exhibit 14, Box 13-15*. On July 31, 2019, while the Vessel was transiting the Atlantic Ocean, prior to Closing, and without notice to plaintiffs, Broad Reach executed and filed documents with the U.S. Coast Guard that transferred title to the Vessel to plaintiffs. *Exhibit 15*. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements. Dufour SAS, Crosslink and Eric Macklin failed to advise the U.S. government of the transfer of title for the Vessel, in violation of 18 U.S.C. § 1956.

C.    Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin represented that Crosslink Marketing LLC was the Importer of Record of the Vessel. *Exhibit 14, Box 26*.

D.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was the Ultimate Consignee of the Vessel. *Exhibit 14, Box 25*.

E.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the Vessel was imported as a "pleasure" vessel. *Exhibit 14, Box 29a*.

F.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541, 542, 1956 and 1957. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was "NOT RELATED" to Dufour SAS. *Exhibit 14, Box 32*.

G.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541 and 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the value of the Vessel was $203,157. *Exhibit 14, Box 35*.

H.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin provided a false invoice for the sale of the Vessel to Broad Reach. *Exhibit 14.*

I.     Upon information and belief, Dufour SAS and Eric Macklin violated 18 U.S.C. § 1343 by providing false information to their customs broker, UTC Overseas, via telephone and electronic mail, in international and/or interstate commerce. These telephone calls and electronic mails occurred between June of 2015 and August of 2015.

J.     Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. On or about March 10, 2015, the Littles provided funds for a downpayment to Broad Reach, who sent the funds to Dufour SAS in France to start construction of the Vessel. *Exhibit 18, email dated March 10, 2015*.

K.     Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. At Closing, the Littles entered into a mortgage agreement for purchase of the Vessel and directed their

lender to transfer funds related to the purchase of the Vessel via wire transfer.

75.     Upon information and belief, Dufour SAS and Eric Macklin used funds derived from the pattern of racketeering activity to further the operation of the Program in Chicago and in other port cities throughout the United States.

76.     Upon information and belief, Dufour SAS, Crosslink and Eric Macklin maintained an interest in, and control of, the Program via their Program operator, Broad Reach.

77.     The foregoing predicate acts constitute a pattern of related activity undertaken continuously over the course of several years. Upon information and belief, the pattern of racketeering activity has been and is a part of defendants' regular way of conducting business in the United States for over four years and continuing to the present day.

78.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs invested $72,500 as a down payment for the Vessel.

79.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs investment in the Vessel has caused them direct and substantial economic loss, including the loss of hassle-free and expense-free ownership. Plaintiffs have suffered, and will continue to suffer, monthly mortgage payments in the amount of $2,439.63 for a minimum of ten years and annual vessel expenses of approximately $20,000 per year for a minimum of ten years.

80.     But for the representations of the enterprise that the Program was legal, plaintiffs never would have purchased the Vessel.

81.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs' investment in the Vessel has caused them direct and substantial economic loss by reason of degradation of the equity in the Vessel due to the illegal importation of the Vessel by Dufour SAS, Crosslink and Eric Macklin.

82. As the direct and proximate result of the pattern of racketeering activity, plaintiffs' Vessel has and may continue to have a possible cloud on the title due to the improper importation of the Vessel performed by defendants.

83. By reason of the premises, plaintiffs have suffered damages in the estimated amount of $570,000.

## COUNT III
## Violation of 18 U.S.C. § 1962(c)

84. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 of its complaint as if fully restated herein.

85. Dufour SAS, Crosslink and Eric Macklin, were associated with the Program and directed Broad Reach in the operation of the Program.

86. Dufour SAS, Crosslink and Eric Macklin participated in the conduct of the Program's affairs through a pattern of racketeering activity by illegally importing Dufour-brand vessels for use in the Program. The pattern of racketeering activity affected foreign and interstate commerce in various ways, including, but not limited to:

A. On July 6, 2019, Dufour SAS executed and filed U.S. Coast Guard Form CG-1261, representing to the U.S. government that the Vessel had been built for "BROAD REACH SAILING LLC," in violation of 18 U.S.C. § 1956. *Exhibit 13*.

B. On July 16, 2019, Dufour SAS exported the Vessel from France to the United States. *Exhibit 14, Box 13-15*. On July 31, 2019, while the Vessel was transiting the Atlantic Ocean, prior to Closing, and without notice to plaintiffs, Broad Reach executed and filed documents with the U.S. Coast Guard that transferred title to the Vessel to plaintiffs. *Exhibit 15*. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements. Dufour SAS, Crosslink and Eric Macklin failed to advise the U.S. government of the transfer of title for the Vessel, in violation of 18 U.S.C. § 1956.

C. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the

United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin represented that Crosslink Marketing LLC was the Importer of Record of the Vessel. *Exhibit 14, Box 26.*

D.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was the Ultimate Consignee of the Vessel. *Exhibit 14, Box 25.*

E.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the Vessel was imported as a "pleasure" vessel. *Exhibit 14, Box 29a.*

F.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541, 542, 1956 and 1957. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was "NOT RELATED" to Dufour SAS. *Exhibit 14, Box 32.*

G.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541 and 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the value of the Vessel was $203,157. *Exhibit 14, Box 35.*

H.     Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin provided a false invoice for the sale of the Vessel to Broad Reach. *Exhibit 14.*

I.     Upon information and belief, Dufour SAS and Eric Macklin violated 18 U.S.C. § 1343 by providing false information to their customs broker, UTC Overseas, via telephone and electronic mail, in international and/or interstate commerce. These telephone calls and electronic mails occurred between June of 2015 and August of 2015.

J.     Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. On or about March 10, 2015, the Littles provided funds for a downpayment to Broad Reach, who sent the funds to Dufour SAS in France to start construction of the Vessel. *Exhibit 18, email dated March 10, 2015.*

    K.    Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. At Closing, the Littles entered into a mortgage agreement for purchase of the Vessel and directed their lender to transfer funds related to the purchase of the Vessel via wire transfer.

87.    Upon information and belief, Dufour SAS and Eric Macklin used funds derived from the pattern of racketeering activity to further the operation of the Program in Chicago and in other port cities throughout the United States.

88.    Upon information and belief, Dufour SAS, Crosslink and Eric Macklin maintained an interest in, and control of, the Program via their Program operator, Broad Reach.

89.    The foregoing predicate acts constitute a pattern of related activity undertaken continuously over the course of several years. Upon information and belief, the pattern of racketeering activity has been and is a part of defendants' regular way of conducting business in the United States for over four years and continuing to the present day.

90.    As the direct and proximate result of the pattern of racketeering activity, plaintiffs invested $72,500 as a down payment for the Vessel.

91.    As the direct and proximate result of the pattern of racketeering activity, plaintiffs investment in the Vessel has caused them direct and substantial economic loss, including the loss of hassle-free and expense-free ownership. Plaintiffs have suffered, and will continue to suffer, monthly mortgage payments in the amount of $2,439.63 for a minimum of ten years and annual vessel expenses of approximately $20,000 per year for a minimum of ten years.

92.    As the direct and proximate result of the pattern of racketeering activity, plaintiffs' Vessel has and may continue to have a possible cloud on the title due to the improper importation of the Vessel performed by defendants.

93.     But for the representations of the enterprise that the Program was legal, plaintiffs never would have purchased the Vessel.

94.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs' investment in the Vessel has caused them direct and substantial economic loss by reason of degradation of the equity in the Vessel due to the illegal importation of the Vessel by Dufour SAS, Crosslink and Eric Macklin.

95.     By reason of the premises, plaintiffs have suffered damages in the estimated amount of $570,000.

## COUNT IV
## Violation of 18 U.S.C. § 1962(d)

96.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 of its complaint as if fully restated herein.

97.     Dufour SAS, Crosslink and Eric Macklin, through a pattern of racketeering activity, conspired to violate 18 U.S.C. § 1962(a)-(c).

98.     As a result of the conspiracy between Dufour SAS, Crosslink and Eric Macklin, the pattern of racketeering activity affected foreign and interstate commerce in various ways, including, but not limited to:

    A.      On July 6, 2019, Dufour SAS executed and filed U.S. Coast Guard Form CG-1261, representing to the U.S. government that the Vessel had been built for "BROAD REACH SAILING LLC," in violation of 18 U.S.C. § 1956. *Exhibit 13*.

    B.      On July 16, 2019, Dufour SAS exported the Vessel from France to the United States. *Exhibit 14, Box 13-15*. On July 31, 2019, while the Vessel was transiting the Atlantic Ocean, prior to Closing, and without notice to plaintiffs, Broad Reach executed and filed documents with the U.S. Coast Guard that transferred title to the Vessel to plaintiffs. *Exhibit 15*. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements. Dufour SAS, Crosslink and Eric Macklin failed to

advise the U.S. government of the transfer of title for the Vessel, in violation of 18 U.S.C. § 1956.

C. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin represented that Crosslink Marketing LLC was the Importer of Record of the Vessel. *Exhibit 14, Box 26.*

D. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was the Ultimate Consignee of the Vessel. *Exhibit 14, Box 25.*

E. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the Vessel was imported as a "pleasure" vessel. *Exhibit 14, Box 29a.*

F. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541, 542, 1956 and 1957. Dufour SAS, Crosslink and Eric Macklin falsely represented that Crosslink Marketing was "NOT RELATED" to Dufour SAS. *Exhibit 14, Box 32.*

G. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 541 and 542. Dufour SAS, Crosslink and Eric Macklin falsely represented that the value of the Vessel was $203,157. *Exhibit 14, Box 35.*

H. Dufour SAS, Crosslink and Eric Macklin imported the Vessel into the United States on August 2, 2015, entering the Vessel into the United States under false statements via the filing of CBP Form 7501, in violation of 18 U.S.C. § 542. Dufour SAS, Crosslink and Eric Macklin provided a false invoice for the sale of the Vessel to Broad Reach. *Exhibit 14.*

I. Upon information and belief, Dufour SAS and Eric Macklin violated 18 U.S.C. § 1343 by providing false information to their customs broker, UTC Overseas, via telephone and electronic mail, in international and/or interstate commerce. These telephone calls and electronic mails occurred between June of 2015 and August of 2015.

J. Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer

of funds in interstate commerce. On or about March 10, 2015, the Littles provided funds for a downpayment to Broad Reach, who sent the funds to Dufour SAS in France to start construction of the Vessel. *Exhibit 18, email dated March 10, 2015*.

K.    Dufour SAS, Crosslink and Eric Macklin violated 18 U.S.C. § 1343 by participating in a scheme anticipated to involve the wire transfer of funds in interstate commerce. At Closing, the Littles entered into a mortgage agreement for purchase of the Vessel and directed their lender to transfer funds related to the purchase of the Vessel via wire transfer.

99.    Upon information and belief, Dufour SAS and Eric Macklin used funds derived from the pattern of racketeering activity to further the operation of the Program in Chicago and in other port cities throughout the United States.

100.    Upon information and belief, Dufour SAS, Crosslink and Eric Macklin maintained an interest in, and control of, the Program via their Program operator, Broad Reach.

101.    The foregoing predicate acts constitute a pattern of related activity undertaken continuously over the course of several years. Upon information and belief, the pattern of racketeering activity has been and is a part of defendants' regular way of conducting business in the United States for over four years and continuing to the present day.

102.    As the direct and proximate result of the pattern of racketeering activity, plaintiffs invested $72,500 as a down payment for the Vessel.

103.    As the direct and proximate result of the pattern of racketeering activity, plaintiffs investment in the Vessel has caused them direct and substantial economic loss, including the loss of hassle-free and expense-free ownership. Plaintiffs have suffered, and will continue to suffer, monthly mortgage payments in the amount of $2,439.63 for a minimum of ten years and annual vessel expenses of approximately $20,000 per year for a minimum of ten years.

104.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs' Vessel has and may continue to have a possible cloud on the title due to the improper importation of the Vessel performed by defendants.

105.     But for the representations of the enterprise that the Program was legal, plaintiffs never would have purchased the Vessel.

106.     As the direct and proximate result of the pattern of racketeering activity, plaintiffs' investment in the Vessel has caused them direct and substantial economic loss by reason of degradation of the equity in the Vessel due to the illegal importation of the Vessel by Dufour SAS, Crosslink and Eric Macklin.

107.     By reason of the premises, plaintiffs have suffered damages in the estimated amount of $570,000.

WHEREFORE, plaintiffs demand judgment be entered in their favor and against defendants, jointly and severally, for damages in the estimated amount of $570,000, treble damages pursuant to 18 U.S.C. § 1964(c), attorney fees, costs and prejudgment interest.

## COUNT V
**Common law fraud against Dufour SAS and Eric Macklin**

108.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 of its complaint as if fully restated herein.

109.     This count is brought pursuant to the court's supplemental jurisdiction, as the claims herein are so related that they form part of the same case or controversy

110.     As part of the operation of the Program, defendants Dufour SAS and Eric Macklin, through advertisements and via their agents, Broad Reach, made false statements of material fact to plaintiffs regarding the legality of the Program and the purchase of the Vessel.

111. At the time of the statements alleged in ¶ 110, defendants knew or should have known that their statements were false, that the Program operated illegally and that the purchase and use of the Vessel in the Program violated federal law. The Program's use of Dufour-brand vessels manufactured in France constituted "commercial" and not "recreational" use under U.S. law, and therefore violated the Jones Act, 46 U.S.C.Appx. § 289. *See Exhibit 17*.

112. The statements alleged in ¶ 110 were made with the intent to induce plaintiffs to purchase the Vessel and enter into the Program.

113. Plaintiffs reasonably relied on the statements alleged in ¶ 110 and purchased the Vessel and entered into the Program.

114. But for the representations that the Program was legal, plaintiffs never would have purchased the Vessel.

115. By reason of the premises, plaintiffs have suffered damages in the estimated amount of $570,000.

WHEREFORE, plaintiffs demand judgment be entered in their favor and against defendants, jointly and severally, for damages in the estimated amount of $570,000, plus attorney fees, costs and prejudgment interest.

Respectfully submitted,

LITTLE LIMITS LLC, MATTHEW LITTLE and SHERRY LITTLE, plaintiffs,

s/ Timothy S. McGovern
Their attorney

Timothy S. McGovern (6275492)
SWANSON, MARTIN & BELL, LLP
330 North Wabash – Suite 3300
Chicago, Illinois 60611
(312) 321-9100
tmcgovern@smbtrials.com