UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW LITTLE, SHERRY LITTLE, and LITTLE LIMITS LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 19 C 5411 |
| v. | ) ) ) | Judge Jorge L. Alonso |
| DUFOUR YACHTS SAS, DUFOUR YACHTS USA, INC., CROSSLINK MARKETING, LLC, and ERIC MACKLIN, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After things went wrong with their purchase of a yacht, plaintiffs filed this RICO and fraud case against entities involved with the purchase. Two defendants move to dismiss. For the reasons set forth below, the Court grants the motion to dismiss.

**I.     BACKGROUND**

The following facts are from plaintiff's complaint, and the Court takes them as true.

In March 2015, plaintiffs Matthew Little and Sherry Little (the "Littles") entered into two agreements with Broad Reach Sailing LLC, which was both a dealer of yachts and an organizer of a pool of yachts available for charter. In the first agreement, the Littles agreed to purchase a yacht, and in the second agreement, the Littles agreed to let Broad Reach Sailing LLC use the yacht in the yacht pool. Plaintiff Little Limits LLC is a limited liability company, of which Matthew Little and Sherry Little are the only members.

In the first agreement, the Littles agreed to pay $374,865 plus tax for a three-cabin Dufour Yacht made in France. [Docket 1-1 at 19, 22]. To pay for their yacht, the Littles: (a)

made a down payment of $72,000 (consisting partly of cash and partly of the value of their trade-in vessel); and (b) took out a mortgage of $330,043.00. Their monthly mortgage payments amounted to $2,439.63 for a period of twenty years.

The second agreement the Littles signed with Broad Reach Sailing LLC in March 2015 was an agreement to enter their new yacht into the sailing pool. Under the second agreement, the Littles gave Broad Reach Sailing LLC exclusive use of their new yacht in exchange for Broad Reach Sailing LLC's agreement to provide: (a) basic maintenance on the yacht; (b) mooring and winter storage of the yacht; (c) a monthly payment to the Littles in an amount high enough to cover the Littles' yacht mortgage; and (d) points that the Littles could use to obtain use of a yacht. Other individuals, too, purchased points that could be traded for use of a yacht.

Things were not yare for long. It is not clear what went wrong or when, because the plaintiffs do not say in their complaint. They *imply* that the yacht pool fell apart, because the yacht pool was unlawful under the Jones Act, owing to the fact that the yacht was not manufactured in the United States. Plaintiffs explicitly allege that they have suffered economic loss in the form of the mortgage payments they have to make, the carryings costs of the yacht and the down payment they made on the yacht. This suggests (but it is not clear from the complaint) that plaintiffs still own the yacht and that Broad Reach Sailing LLC is no longer paying them to use the yacht in the yacht pool. Broad Reach Sailing, LLC, however, is not a defendant to this suit, and plaintiffs do not allege breach of contract.

Instead, plaintiffs assert claims for fraud and for violation of the RICO statute against the following entities: Dufour Yachts SAS, Dufour Yachts USA, Inc., Crosslink Marketing, LLC and Eric Macklin. According to plaintiffs' allegations, Dufour Yachts SAS manufactures and sells yachts. It also exports yachts to the United States via Dufour Yachts USA, Inc., which was

a Maryland corporation before it was dissolved in 2013. In or about 2010, Dufour (plaintiffs do not say whether it was Dufour Yachts SAS or Dufour Yachts USA, Inc.) hired defendant Eric Macklin ("Macklin") as its sales director for North America. Macklin is the authorized member and registered agent for defendant Crosslink Marketing, LLC.

Plaintiffs allege that Dufour Yachts SAS and Macklin have "marketed and operated fractional ownership programs throughout the United States, including . . . Broad Reach in Chicago, Illinois." (Complt. ¶ 24). Plaintiffs allege that Dufour Yachts SAS and Macklin "organized" the Broad Reach program and that Broad Reach manages the program. (Complt. ¶¶ 30-31). Plaintiffs allege that the Broad Reach program is "comprised of members that are associated in fact." (Complt. ¶ 28). Those members include both yacht owners (who, like plaintiffs, made down payments on yachts that they agreed to enroll in the program in order to defray the costs of ownership) and non-owner members (who spent between $7,500 and $12,500 annually to purchase points they could use to obtain time on yachts). Plaintiffs allege that at least forty-eight individuals were members of the program.

By July 2019, the Littles' new yacht was headed for America. Dufour Yachts SAS executed for the Coast Guard a form stating that the yacht was built for Broad Reach Sailing LLC. While the yacht was sailing to the United States, Broad Reach Sailing LLC transferred title to the Littles. By August 2, 2019, the yacht arrived in the United States. Macklin and Dufour Yachts SAS provided to the United States Customs Service documentation in which they falsely stated that Crosslink Marketing LLC was the Importer of Record and the ultimate consignee of the yacht and that the yacht was imported as a pleasure vehicle. Macklin and Dufour Yachts SAS also falsely informed the U.S. Customs Service that Crosslink Marketing,

3

LLC was not related to Dufour Yachts SAS and that the value of the yacht was only $203,157.00.

On August 12, 2015, the Littles closed on the purchase of their yacht. At that time, Sherry Little asked Ted Anderson ("Anderson") of Broad Reach Sailing LLC whether the yacht would be considered "recreational." Anderson stated that the program involved "strictly bareboat charters" and thus the program was considered to be "recreational" rather than commercial or "passenger-for-hire" under the law of the United States. (Complt. ¶ 57). Plaintiffs allege that, unbeknownst to them, the program's use of yachts from outside of the United States constituted "commercial" use under U.S. law and, therefore, violated the Jones Act.

Based on these allegations, plaintiffs assert four RICO claims (Counts I-IV) against all defendants and one count (Count V) of common-law fraud against Macklin and Dufour Yachts SAS. Two defendants, Crosslink Marketing, LLC and Macklin, move to dismiss.

In connection with their motion to dismiss, defendants Crosslink Marketing, LLC and Macklin point out that plaintiffs filed a separate, state-court lawsuit as well. Defendants attached to their motion to dismiss plaintiffs' third-amended complaint, which plaintiffs filed in the Circuit Court of Cook County on December 14, 2018.[1] The third-amended complaint named as defendants Dufour Yachts SAS, Dufour Yachts USA, Inc., Crosslink Marketing, LLC, "Eric Maklin (also known as Jeffrey Eric Macklin)" and Broad Reach Sailing, LLC, among others. The third-amended complaint outlined the same yacht program alleged in this case. Against Dufour Yachts SAS, Dufour Yachts USA, Inc, Crosslink Marketing, LLC, Eric Macklin and

---

[1] The Court takes judicial notice of this publicly-filed document, as well as the docket sheet from the Circuit Court case, [Docket 23-2]. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012).

4

Broad Reach Sailing, LLC plaintiffs asserted claims for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, conspiracy and fraudulent concealment. Against Broad Reach Sailing, LLC, plaintiffs alleged breach of contract and specifically alleged that Broad Reach Sailing, LLC failed to make the promised monthly payments to plaintiffs. In the third-amended complaint filed in state court, plaintiffs alleged that defendants were "agents of one another." [Docket 23-2 at ¶ 78].

Defendants also attached to their motion to dismiss a copy of the state-court docket sheet, which reflects that plaintiffs voluntarily dismissed their claims against Dufour Yachts SAS, Dufour Yachts USA, Inc, Crosslink Marketing, LLC and Eric Macklin on August 20, 2019. [Docket 23-1 at 29]. That was after the state court granted Dufour Yachts SAS's motion to quash service. [Docket 23-3 at 13].

## II.     STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

5

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b).

### III. DISCUSSION

#### A. *Res Judicata* and claim splitting

Defendants first move to dismiss the claims of plaintiff Little Limits, LLC on the basis of *res judicata*. Defendants point out that, in the state-court action, plaintiffs brought claims against Dufour Yachts SAS, Dufour Yachts USA, Inc, Crosslink Marketing, LLC and Eric Macklin. Defendants state that plaintiff Little Limits, LLC's claims in that case were dismissed with prejudice.

The problem with defendants' argument is that it is premature. *Res judicata* is an affirmative defense. Fed.R.Civ.P. 8(c)(1). A plaintiff need not plead around an affirmative defense, and the Court may not dismiss on the basis of an affirmative defense unless the plaintiff alleges, and thus admits, the elements of the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *United States Gypsum Co. v.*

6

*Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). Here, plaintiffs made no mention of the state-court case in their complaint. Thus, Little Limits, LLC has not alleged (or, thus, admitted) the ingredients of defendants' affirmative defense. Accordingly, the Court will not dismiss on the basis of the affirmative defense.

Next, defendants argue that plaintiffs' claims should be dismissed because they violate the "claim-splitting doctrine." (Def. Brief at 8/Docket 23 at 16). The idea of claim-splitting is similar to *res judicata* but, in certain jurisdictions, it bars claims even *before* a final judgment. The Tenth Circuit Court of Appeals, for example, has explained:

> [T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit. This makes sense, given that the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation. If the party challenging a second suit on the basis of claim splitting had to wait until the first suit was final, the rule would be meaningless. The second, duplicative suit would forge ahead until the first suit became final, all the while wasting judicial resources.

*Katz v. Girardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011); *see also Vanover v. NCO Financial Serv. Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) ("While claim-splitting and res judicata both promote judicial economy and shield parties from vexatious and duplicative litigation, 'claim splitting is more concerned with the district court's comprehensive management of its docket.'") (citing and adopting *Katz*, 655 F.3d at 1218-19); *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 273 Fed. Appx. 256, 265 (4th Cir. 2008) ("In a claim splitting case, the second suit will be barred if the claim involves the same parties and 'arises out of the same transaction or series of transactions as the first claim.'") (citation omitted).

The Court is sympathetic to defendants' argument and does not like to see its (or any other court's) time wasted. Nonetheless, defendants' claim-splitting argument has flaws. First, the Seventh Circuit has not endorsed a general bar against pre-judgment claim-splitting. In

7

*Arrigo v. Link*, 836 F.3d 787 (2016), the Seventh Circuit affirmed the decision of a district court to dismiss claims in a second suit as barred before judgment was entered in the first suit and even described the district court's reasoning as "sound." *Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016). Still, in that case, the Seventh Circuit was considering the appeals of both the first and the second cases at the same time. In the opinion, the Seventh Circuit had already affirmed the decision to deny leave to amend and that decision had already become a final judgment before the Seventh Circuit affirmed the decision to dismiss the second suit. *Arrigo*, 836 F.3d at 800 ("There is now unquestionably a final judgment in the first suit" so remanding just so the district court could dismiss the second suit based on *res judicata* would have been a waste of judicial resources.). In *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015), however, the Seventh Circuit described it as "error" that the district court had dismissed the second suit given that the first suit "was still pending and thus the interim ruling denying leave to [amend] was not a final decision having preclusive effect." *Sklyarsky*, 777 F.3d at 896.

      The second flaw in defendants' claim-splitting argument is that the appropriate law to apply is Illinois law, because the issue is the preclusive effect of a case in Illinois court. *See Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) ("Because an Illinois court rendered the judgment on which the application of res judicata is based, we apply Illinois law to determine whether res judicata bars the present action); *cf. Telamon Corp. v. Charter Oak Fire Ins. Co.*, 850 F.3d 866, 872-73 (7th Cir. 2017) (affirming the district court's decision to dismiss a second suit after leave to amend was denied in the first suit, based on *Indiana law* of claim splitting, because the first suit was in federal court on diversity jurisdiction). Under Illinois law, *res judicata* requires a judgment, not the mere existence of a case. *See Baek*, 886 F.3d at 660 (citing *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 703 N.E.2d 883, 889 (1998)); *Richter*

8

*v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 14 (Ill. 2016) ("A nonfinal order cannot bar a subsequent action.").

For these reasons, the Court will not dismiss plaintiffs' claims on the basis of claim-splitting before a judgment enters in the first case.

This Court never recommends the waste of time or money that results from litigating similar issues in multiple venues. Plaintiffs, no doubt, are aware that they risk paying costs in this forum if they lose in state court and that judgment is *res judicata* here. The Seventh Circuit, too, has warned about the perils of litigating in two forums at once:

> This court deprecates the practice of filing two suits over one injury—often with an argument based on state law presented to a state court, and an argument arising under federal law presented to a federal court. Multiplication imposes needless costs on one's adversary, on the judicial system, and on other litigants, who must endure a longer queue. Plaintiffs hope that more suits will improve their chances: they seek the better of the outcomes. To discourage the tactic, judges award the first outcome: whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation. Instead of improving plaintiffs' chances, claim-splitting reduces them—for the first court will not have entertained all of the arguments, and the missing ones may have been winners. This penalty for claim-splitting ought to eliminate the practice; a plaintiff cannot do worse by presenting all claims to one forum. But some lawyers are ignorant of the rule, or hope that courts will ignore it, for claim-splitting continues.

*Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995) (citations omitted).

### B. *Colorado River* Abstention

Next, defendants argue that this Court should abstain from hearing this case due to *Colorado River* abstention. In *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court stated:

> there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of '(w)ise judicial administration, giving regard to conservation of

9

juridical resources and comprehensive disposition of litigation.' Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings in the Federal court having jurisdiction.

*Colorado River*, 424 U.S. at 817 (citations omitted). The Supreme Court went on to say that the reason a state-court case was no bar to a similar federal one is "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. In other words, *Colorado River* abstention is the exception, not the rule. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 500 (7th Cir. 2011) ("The court's task 'is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather the task is to ascertain whether there exists 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.'") (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 25-26 (1983)).

In considering whether *Colorado River* abstention is appropriate, a court first considers whether the cases are parallel, and, if they are, weighs ten non-exhaustive factors. *Baek*, 886 F.3d at 663. As the Seventh Circuit has explained:

> Two suits are parallel 'when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.' Formal symmetry is unnecessary, as long as there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'

*Depuy Synthes Sales, Inc. v. Orthola, Inc.*, 953 F.3d 469, 477-78 (7th Cir. 2020) (citations omitted). Here, the two cases are similar. Both cases arise from the same set of operative facts (the Littles' purchase of the yacht and their agreement to place the yacht in the program), and plaintiffs seem to claim overlapping injuries (including being stuck with mortgage payments) in both suits. Still, the parties and claims are mostly different. Broad Reach Sailing, LLC is not a defendant in this suit, and the defendants to this suit are not now (though they once were) defendants in the state-court suit. That cuts against a finding that the cases are parallel. Doubts

10

about the parallel nature of the suit are to be resolved in favor of exercising jurisdiction, *Adkins*, 644 F.3d at 499, so the Court will exercise jurisdiction.

In any case, the ten factors courts weigh in the event of parallel actions do not suggest this is an exceptional case in which abstention is warranted. Those ten factors include: "(1) whether the state court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained . . . ; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiffs' rights; (7) the relative progress [of the two] proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim." *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003). Here, the state court has not assumed jurisdiction over any property. If it had, that would cut in favor of abstention, because the disposition of property is best handled in a single proceeding. There is nothing inconvenient about this federal forum versus the Circuit Court of Cook County a few blocks away, and the governing law (RICO) is federal. The state court, on the other hand, obtained jurisdiction first and that litigation is further ahead than this. Although it would be desirable to avoid piecemeal litigation, that is always the case. Nothing about this case strikes the Court as being exceptional, and declining jurisdiction is meant to be exceptional. The Court will not abstain.

This Court's decision on abstention would likely be different if the state court had already rendered a decision and the finality of that decision awaited only a decision by the appellate court. *Baek*, 886 F.3d at 665 (district court did not abuse discretion by staying federal case pending resolution of appeal in state-court case). The state court, however, has not yet rendered

11

a judgment, to this Court's knowledge. The Court recognizes its virtually-unflagging obligation to exercise its jurisdiction, and it will do so here.

    **C.    Fraud**

Next, defendants move to dismiss plaintiffs' claims for failure to state a claim upon which relief may be granted.

In Count V, plaintiffs assert a claim for common-law fraud against defendants Dufour Yachts SAS and Macklin. Plaintiffs allege defendants "made false statements of material fact to plaintiffs regarding the legality of the program and the purchase of the vessel." (Complt. ¶ 110). Specifically, plaintiffs allege that, at the closing on August 12, 2015, "plaintiff Sherry Little asked Ted Anderson of Broad Reach whether the Vessel should be considered 'Recreational.'" (Complt. ¶ 57). Plaintiffs allege, "Ted Anderson stated that the Fractional Sailing Program involved strictly bareboat charters, and therefore was recreational use under U.S. law and, specifically, was not a commercial or passenger-for-hire operation." (Complt. ¶ 57).

Under Illinois law, the elements of common-law fraud are: "(1) a false statement of material *fact*; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (Ill. 1996) (emphasis added). Fraud, pursuant to Rule 9(b), must be plead with particularity.

Defendant Macklin argues that plaintiffs have not alleged he made any misstatements of fact. The Court agrees. Although plaintiffs include allegations of what was said by "Ted Anderson of Broad Reach," plaintiffs include no allegations as to particular statements by Macklin. The plaintiffs allege only generally they "relied on the expertise of Dufour, Eric

12

Macklin and their agents regarding the legality of purchasing the Vessel for entry into the Program." (Complt. ¶ 59). Plaintiffs do not allege what Macklin said, when he said it or where he said it. Thus, the Court agrees that plaintiffs have not alleged with particularly any misstatement by Macklin.

Furthermore, although plaintiffs do not allege with particularly any misstatement by Macklin, their theory seems to be that Macklin made a misrepresentation of *law*, because plaintiffs' allegation is that they relied on Macklin "regarding the legality of purchasing" the Vessel. (Complt. ¶ 59). Even were such a statement alleged with particularity, it would not suffice. As the Illinois Supreme Court has explained, "misrepresentations or mistakes of law cannot form the basis of a claim for fraud" because "all persons are presumed to know the law." *McIntosh v. Walgreens Boots Alliance, Inc.*, 135 N.E. 3d 73, 84 (Ill. 2019). For the same reason, "one is not entitled to rely upon a representation of law." *Kupper v. Powers*, 71 N.E. 3d 347, 354-55 (Third Dist. 2017). Thus, any allegations that Macklin made a misrepresentation of *law* would be legally insufficient.

Accordingly, Count V against Macklin is dismissed without prejudice.

**D.     RICO**

In Counts I through IV, plaintiffs assert that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C §§ 1962(a), (b), (c) and (d), respectively.

RICO provides a private right of action for violations of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). In passing the RICO statute, Congress sought "to eradicate organized, long-term criminal activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). "RICO has not federalized every common-law state cause of action" despite "widespread abuse of civil RICO." *Midwest Grinding*, 976 F.2d at 1025. The Seventh Circuit has explained:

> The prototypical RICO case is one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetuate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over.

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997). RICO has particular pleading (and proof) requirements, because RICO is not meant to be "'a surrogate for garden-variety fraud actions properly brought under state law.'" *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019) (quoting *Midwest Grinding*, 976 F.2d at 1022).

    1.    § 1962(c)

In Count III, plaintiffs assert a violation of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim, plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies*, 943 F.3d at 336.

A "pattern of racketeering activity" is defined in the RICO statute as "at least two acts of racketeering activity [within a specified time period]." 18 U.S.C. § 1961(5). Racketeering activity includes many indictable offenses, including mail and wire fraud, that are set out in the RICO statute. 18 U.S.C. § 1961(1). Wire (or mail) fraud requires allegations of a scheme to defraud, intent to defraud and use of wires (or mail) in furtherance of the scheme. *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016). Allegations of mail or wire fraud, of course, must comply with Rule 9(b), which "requires a plaintiff to provide 'precision and some measure of

14

substantiation' to each fraud allegation, i.e., "a plaintiff must plead the 'who, want, when, where, and how' of the alleged fraud." *Menzies*, 943 F.3d at 338.

Defendants argue that plaintiffs have not adequately alleged racketeering activity. First, as to plaintiffs' allegation they were given misinformation about the legality of the yacht-pool program, defendants correctly point out that plaintiffs have not adequately alleged wire fraud. As explained above, the Court agrees that plaintiffs have not alleged with particularity any misstatements by Macklin or Crosslink Marketing, LLC. Furthermore, the Court fails to see how allegations of a misstatement of *law*, as opposed to a misstatement of fact, could ever constitute wire fraud. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620-21 (9th Cir. 2004) (wire fraud cannot be predicated on misstatement of law); *Tronsgard v. FBL Financial Group, Inc.*, 312 F. Supp.3d 982, 993 (D. Kan. 2018) (same). The Supreme Court has said that "defraud" in the wire fraud statute incorporates the "well-settled meaning at common-law" of fraud, *Neder v. United States*, 527 U.S. 1, 22-23 (1999), and, as explained above, common-law fraud does not include misstatements of law.[2]

Plaintiffs have also alleged that Macklin and Crosslink Marketing, LLC used the wires (Complt ¶ 63(I)) to make other misstatements. For example, plaintiffs allege that, on August 2, 2015, Macklin and Crosslink Marketing, LLC falsely represented to the Customs Service that the value of plaintiffs' yacht was $203,157 (when plaintiffs had paid much more) and also falsely stated on an invoice that the yacht was sold to Broad Reach (rather than to plaintiffs). (Complt. ¶ 63(G,H)). The Court will assume without deciding that these constitute predicate acts of wire fraud.

---

[2] The Court notes that it does not agree with defendants' argument that wire fraud requires reasonable reliance. "The common-law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes." *Neder*, 527 U.S. at 24-25.

Defendants next argue that plaintiffs have not alleged a *pattern* of racketeering activity. "Satisfying the pattern element is no easy feat." *Menzies*, 943 F.3d at 336. Pleading a pattern of racketeering activity requires plaintiffs to "demonstrate a relationship between the predicate acts as well as a threat of continuing activity." *Menzies*, 943 F.3d at 337 (quoting *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011)). Continuing activity means either "a closed-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit" or "an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue." *Menzies*, 943 F.3d at 337 (quoting *Roger Whitmore's Auto Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 673 (7th Cir. 2005)).

Here, plaintiffs fail to allege continuity. Plaintiffs argue that they allege continuity by alleging other "members of the Program appear to be victims of the same scheme." (Plf. Brief at 19/Docket 35 at 19). Plaintiffs seem to think is enough that they alleged the yacht-pool program included 8 vessels and 48 members. The Court disagrees. Plaintiffs include no allegations as to any predicate acts directed toward those members. As the Seventh Circuit explained in *Menzies*:

> RICO's pattern element requires more than a plaintiff pointing to others and saying, on information and belief, that those persons received mailings about an allegedly fraudulent . . . scheme. The plaintiff needed to come forward, not with general statements about what others may have received, but with particular allegations detailing the content of the communications with others allegedly defrauded by defendant's conduct.

*Menzies*, 943 F.3d at 341. Plaintiffs also seem to be arguing that they allege a pattern of racketeering in the form of a "violation of the Jones Act concerning all members (because they are part of the Program)." (Plf. Brief at 21/Docket 35 at 21). Plaintiffs, however, do not explain why a Jones-Act violation constitutes racketeering. The RICO statute sets out a long list of conduct that constitutes racketeering for purposes of RICO. 18 U.S.C. § 1961(1). The list does not include a violation of the Jones Act. Because a Jones-Act violation does not constitute

16

racketeering for purposes of RICO, plaintiffs cannot establish a pattern of racketeering merely by alleging the Jones Act was violated with respect to every member of the program.

These are not the only problems with plaintiffs' claims under RICO § 1962(c), but they are reason enough to dismiss the claim. The Court agrees with defendants that plaintiffs have not stated a claim for violation of 18 U.S.C. § 1962(c).

### 2. § 1962(a)

In Count I, plaintiffs assert a claim under 18 U.S.C. § 1962(a). That section of RICO makes it "unlawful for any person who has received any income derived . . . from a pattern of racketeering . . . to use or invest . . . any part of such income . . . in . . . any enterprise . . ." 18 U.S.C. § 1962(a). Defendants Macklin and Crosslink Marketing, LLC move to dismiss.

This claim, too, must be dismissed for failure to state a claim. The first problem with this claim is that, as the Court explained above, plaintiffs have not alleged a pattern of racketeering.

The second problem is a failure to allege plausibly that these defendants invested in an enterprise. The "enterprise" plaintiffs assert is the yacht-pool program. (Complt. ¶¶ 28, Plf. Brief at 23/Docket 35 at 23).[3] Plaintiffs do not allege that Crosslink Marketing, LLC invested in the program. As for Macklin, plaintiffs allege "[u]pon information and belief, Dufour SAS and Eric Macklin used funds derived from the pattern of racketeering activity to further the operation of the Program in Chicago." (Complt. ¶ 64). Such conclusory allegations do not suffice. Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and

---

[3] The Court need not decide at this point whether plaintiffs have plausibly alleged an enterprise.

17

willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). Instead, plaintiffs must include enough facts to make their claim plausible.

Plaintiffs fail to state a claim in Count I.

### 3. § 1962(b)

In Count II, plaintiffs assert that defendants violated 18 U.S.C. § 1962(b), which "makes it unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any enterprise . . ." 18 U.S.C. § 1962(b). Defendants move to dismiss.

The Court, again, agrees with defendants that Count II fails to state a claim. As the Court explained above, plaintiffs have failed to allege a pattern of racketeering. Furthermore, plaintiffs fail to allege plausibly that defendants used a pattern of racketeering to acquire or maintain control of an enterprise. Plaintiffs allege in conclusory fashion that "Crosslink and Macklin, through a pattern of racketeering activity, maintained and [sic] interest in, and control of the Program." (Complt. ¶ 74). Plaintiffs have not alleged facts making that conclusion plausible. Plaintiffs have failed to state a claim.

### 4. § 1962(d)

Plaintiffs have failed to state a RICO claim in Counts I-III. It follows that plaintiffs have also failed to state a claim for conspiracy under § 1962(d) in Count III. *United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856-57 (7th Cir. 2013) ("Having failed to plead facts that would establish a violation of Section 1962(c), the [plaintiff] cannot state a claim for conspiracy under Section 1962(d) based on those same facts.").

Accordingly, defendants' motion to dismiss plaintiffs' RICO Counts I-IV is granted.

18

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendants' motion [23] to dismiss. Counts I, II, III, IV and V are dismissed without prejudice as to defendant Macklin. Counts I, II, III and IV are dismissed without prejudice as to defendant Crosslink Marketing, LLC. Plaintiffs are granted 35 days in which to file an amended complaint, should they so choose and if they can do so within the bounds of Rule 11.

SO ORDERED.                                      ENTERED: September 28, 2020

_____
JORGE L. ALONSO
United States District Judge